UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------**X**
JOSEPH SPADAFORA and GUDELIA LEVINE,

      Plaintiffs,

    - against –

THE STANDARD FIRE INSURANCE COMPANY
and TRAVELERS INDEMNITY COMPANY,

      Defendants.
-----------------------------------------------------------------**X**

19 Civ.   6631

**COMPLAINT**

**Jury Trial Demanded on All
Issues**

     Plaintiffs,  by and through their attorneys, the Law Offices of Eric Dinnocenzo, as and for their Complaint, alleges upon information and belief as follows:

## INTRODUCTION

    1.     This is a first-party insurance case seeking Declaratory Judgment of coverage and breach of contract with respect to the failure to pay a claim made under Yacht Insurance policy. The plaintiffs purchased a highly unique, custom-made wood boat that took years to build and cost over one million dollars.  Unfortunately, in November 2018 the boat struck a rock in New Rochelle harbor and suffered extensive damage.  Given that the boat is custom-made and in light of the damage, the cost of repairs exceed the policy limits of $450,000.  Yet the defendant insurer has only offered less than ten percent of this amount.

## PARTIES

    2.     At all material times, plaintiff Joseph Spadafora is a natural person and citizen of the State of New York domiciled at 326 West 76th Street, New York, New York 10023.

    3.     At all material times, plaintiff Gudelia Levine is a natural person and citizen of the State of New York domiciled at 326 West 76th Street, New York, New York 10023.

4.      At all material times, defendant The Standard Fire Insurance Company was and is a corporation with an office and principal place of business located at One Tower Square, Hartford, CT 06183.

5.      At all material times, defendant Travelers Indemnity Company was and is a corporation with an office and principal place of business located at One Tower Square, Hartford, CT 06183.

6.      At all material times, defendants were insurance companies that were duly authorized to sell insurance policies in the State of New York and that conducted business in the State of New York.

7.      Plaintiffs brings this action on their own behalf and as agents and/or trustees on behalf of and for the interest of all parties who may be or become interested in the claims referred to herein, as their respective interests may ultimately appear, and plaintiffs are entitled to maintain this action.

## JURISDICTION AND VENUE

8.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure. Jurisdiction is predicated upon 28 U.S.C. § 1333.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum of $75,000 and plaintiffs and defendants are citizens of different states.

10.     Venue is proper in this district in that the Plaintiffs are citizens residing in the district, and the policy of insurance giving rise to this dispute was issued within this district.

## RELEVANT FACTS

11.　Over an eight year period, from 2008 until 2015, Plaintiffs had a wooden yacht constructed by master builder Douglas Dodge in Gower's Boat Shop, Beals Island, Maine. Upon completion, the yacht was christened "Gudelia".

12.　The yacht was a custom design, constructed of aged white Maine pine personally picked from living trees and then aged by Mr. Dodge for use in this construction. The hull of the yacht is 100% wood. The yacht is a 38 foot long "Lobster Boat" design, with a 12.6 foot beam. "Gudelia" was assigned Hull Identification No. USZ002471014 and her United State Coast Guard Documentation No. is 1256320.

13.　As constructed, the "Gudelia" had a replacement value of approximately $1,500,000 and a fair market value in excess of $1,000,000.00.

14.　In 2016 Plaintiffs engaged marine insurance broker Frenkel & Co. to obtain a Yacht Insurance policy insurance on their behalf for "Gudelia." A Policy was obtained from defendants. The yacht was insured for $450,000.00. The Policy had been renewed annually, premiums were paid, and the policy was in full force and effect on the date of the incident. The Policy provided Hull and Property Coverage to the insureds against "all accidental risks of physical loss or damage to the insured property."

15.　At all material times the Yacht was used exclusively for recreational use.

16.　In 2018 the yacht was generally moored in New York Harbor at Liberty Landing Marina, in Jersey City, New Jersey.

17.　In November 2018 Mr. Spadafora arranged to have the yacht transported to the Caribbean by having it stored as cargo on an ocean going freighter in Newport, Rhode Island. At

3

the time, the vessel was fully outfitted and equipped for navigation, in good working order, staunch, tight and in all respects seaworthy.

18.    In preparation for the aforementioned transit, Mr. Spadafora arranged to have electronics work performed on the yacht in New Rochelle Harbor, New York. While in the approach channel entering New Rochelle Harbor, the yacht struck a submerged rock amidships, rose up and then fell back onto the rock again further aft.

19.    Mr. Spadafora noticed water in the bilges and the bilge pumps began operating. He returned to Liberty Landing in New York Harbor and had the water pumped out. He discussed the issue with personnel at Liberty Landing and the consensus at the time was there may be minor damage, which was causing leakage into the hull. As he would not have been able to have the yacht lifted out of the water and inspected at Liberty Landing for a week, due to prior commitments at the marina facilities, and after determining the seepage was not excessive, plaintiff opted to take the yacht to Newport for loading on board the freighter.

20.    During the transit to Newport, Mr. Spadafora noticed difficulties in steering the yacht and was again taking on water. After arrival in Newport, and as the yacht was being hauled up onto the freighter, he was able to first observe the physical damage that had been caused to the yacht. At this point, realizing the extensive nature of the damage, Mr. Spadafora filed a claim under his policy with defendants, by phoning the claim center. Subsequently defendants' employee, Don Llewellyn, called Mr. Spadafora back and they discussed the matter.

21.    Mr. Spadafora offered to have the yacht removed from the freighter. As the freighter was due to call next in Baltimore, Mr. Llewellyn advised Mr. Spadafora that he would send a surveyor to take a look at the yacht in Baltimore rather than have the yacht removed from the freighter in Newport.

22.     On or about November 19, 2018 the freighter departed Newport and on or about November 22, 2018 the freighter arrived in Baltimore.

23.     Surveyor Robert Stefanowicz, employed by Susquehanna Marine Surveys company, and acting on behalf of Standard Fire attended on board the freighter in Baltimore on November 23, 2018. Mr. Stefanowicz issued a November 26, 2018 report entitled "Susquehanna Marine Surveys Damage Claim Report" with number SMS 18204, in which he reported that the keel had been displaced by the impact by more than two inches and that the keel had twisted toward port. He noted that the propeller, propeller shaft, and the rudder would all need to be removed and that the engine may need to be lifted out of the boat during repairs. He concluded that additional damage to the keel structure may be found during the repair process.

24.     Mr. Stefanowicz refused to provide an estimate, although it had been requested. He stated: "The estimated reserve for repair is suggested be set at $40,000 pending any additional inspections or diagnostic procedures." There is no specific itemization of the costs of repair.

25.     Mr. Spadafora again inquired whether the "Gudelia" should be taken off the freighter. Defendants again advised him that it would not be necessary, as repairs could be performed in the Caribbean area.

26.     Mr. Spadafora thereafter engaged the services of Paul Scopinich to inspect the "Gudelia" upon her arrival in St. Thomas.

27.     Mr. Scopinich inspected the yacht on December 6 prior to her discharge from the freighter in St. Thomas. After inspecting the yacht, he determined that the scope of repair would include the removal of the keel from the keel frame, including the propeller, shaft and rudder; remove all mechanical systems from the centerline, including the main engine, generators, two

fuel tanks and the running gear. The keel would need to be fully replaced, as well as associated framing and bulkheads. Scopinich placed an initial estimate for the repairs at $342,302.50 and noted that additional costs would be likely as he expected more damage would be found once they started removing parts and performing repairs.

28.     This report was provided to Mr. Llewellyn.

29.     Mr. Llewellyn assigned the claim to Nicholas Rago.

30.     In a subsequent phone call between Spadafora's representative, Matt Tulleson, Nicholas Rago and the boat builder, Douglas Dodge, Mr. Dodge informed Mr. Rago and defendants that if the keel was displaced more than one inch, it would be impossible to perform proper repairs and the yacht should be deemed a constructive total loss.

31.     In response, defendants, by Nicholas Rago, presented a formal estimate of repair to plaintiff totaling $27,877.44 and offered to pay $23,377.44, after application of the deductible.

32.     Mr. Spadafora thereafter discussed potential repair with various people in the industry and determined that the eventual cost would far exceed the policy limits of $450,000 and that once repairs were to be commenced, he would be responsible for any excess above the policy limits.

33.     Plaintiffs are entitled to be paid the full policy limit of $450,000.

34.     The events comprising the claim are an "occurrence" under the Policy.

35.     Plaintiffs have paid all premiums required under the terms of the policy.

36.     Plaintiffs have made a claim under the policy and have performed all obligations required of them under the policy.

37.     The Claim is a loss recoverable under the Policy.

38.     Defendants are obligated under the Policy to pay plaintiffs' claim.

39.     Defendants' decision regarding the estimate of repair is improper and without logical support and foundation.

40.     Defendants have failed and refused, after demand, to pay the Claim as submitted by Plaintiff.

## AS AND FOR A FIRST CAUSE OF ACTION - DECLARATORY JUDGMENT

41.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the foregoing paragraphs, inclusive, as if herein set forth at length.

42.     Plaintiffs have claimed that Defendants are responsible to remit the policy limits for the damages sustained to the Yacht, as the costs of repair will exceed the policy limits.

43.     An actual, present and justiciable controversy exists between plaintiffs and Defendants concerning the Claim.

44.     Plaintiffs seeks declaratory judgment from this Court that (1) the Yacht be deemed a constructive total loss; and (2) that Defendants pay and remit the policy limits, less the policy deductible, to Plaintiffs.

## AS AND FOR A SECOND CAUSE OF ACTION – BREACH OF CONTRACT

45.     Plaintiffs repeat, reiterate and reallege each and every allegation set forth in the foregoing paragraphs, inclusive, as if herein set forth at length.

46.     The policy was and is a valid contract of insurance between plaintiffs and defendants.

47.     The defendants had an obligation to the plaintiffs with respect to the policy so that they would not take any action that would deprive the plaintiffs of their rights under the policy.

48.     Defendants' failure to pay plaintiffs' claim under the policy and/or amounts due

7

under the policy was wrongful.

49.     Defendants have breached their contract with plaintiffs.

50.     Plaintiffs have suffered damages from the breach of contract in the amount of the

full policy limit of $450,000.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

**WHEREFORE,** Plaintiffs pray:

1.     That process in due form of law may issue against Defendants citing them to appear

and answer all and singular the matters aforesaid;

2.     That judgment may be entered in favor of Plaintiffs against Defendants for the

amount of Plaintiffs' damages in the amount of at least $450,000 plus interest, costs and attorneys

fees; and

3.     That this Court grant to Plaintiffs such other and further relief as may be just and

proper.

Dated: New York, New York
        July 1 6, 2019

LAW OFFICES OF
ERIC DINNOCENZO

By: _____

Eric Dinnocenzo  (ED 3430)
Attorney for Plaintiff
469 Seventh Avenue
Suite 1215
New York, NY 10018
(212) 933-1675
eric@dinnocenzolaw.com

8