UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
JOSEPH SPADAFORA and GUDELIA LEVINE,    Civil No.: 19-cv-6631 (GW)

                                  Plaintiff,

      -against-

THE STANDARD FIRE INSURANCE
COMPANY,

                              Defendant.
----------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO AMEND ITS ANSWER

                                                  LAW OFFICES OF
                                                  ERIC DINNOCENZO

By:    *s/Eric Dinnocenzo*
        Eric Dinnocenzo  (ED 3430)
        Attorney for Plaintiff
        469 Seventh Avenue, Suite 1215
        New York, NY 10018
        (212) 933-1675
        eric@dinnocenzolaw.com

# Table of Contents

                                                **Page**

**Introduction**……………………..………………………………………………………..1

**Judicial admission and waiver**..…………..……..………………………………………1

**Undue delay, bad faith and prejudice**……………………….….…………………….6

**The Amended Answer is still insufficiently pled**………………………………..………8

**Lack of Merit and Futility**…………………………………………………………………10

**Defendant cannot change its position in litigation to deny the claim**……………………12

**Mitigation**…………………………………………………………………………………15

**Conclusion**………………………………………………………………………………..16

# Table of Authorities
**Page**

**CASES**

*Agerbrink v. Model Serv. LLC,* 155 F. Supp. 3d 448 (S.D.N.Y. Jan. 7, 2016)………………..6

*Agrawal v. Metro. Life Ins. Co.*, 89 A.D.3d 503 (1st Dept. 2011)……………………………….13

*AIG Eur. S.A. v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369 (S.D.N.Y. 2010)……………..5

*Banks v. Yokemick*, 214 F. Supp. 2d 401 (S.D.N.Y. 2002) ……………………………………...2

*Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir. 1993)……………………………………….6

*Caldera v. Utica Mut. Ins. Co.*, 130 A.D.3d 665 (2d Dept. 2015)……………………………..8

*Cedar & Wash. Assocs., LLC v. United States Fire Ins. Co.*,
    2006 U.S. Dist. LEXIS 113589 (S.D.N.Y. Sept. 26, 2006)……………………………13

*Certain Underwriters at Lloyd's London v. Bioenergy Dev. Group, LLC*,
    2020 N.Y. App. Div. LEXIS 7869 (N.Y. App. Div. 1st Dept.
    Dec. 17, 2020)……………………………………………………………………………….10

*Chimarev v. TD Waterhouse Investor Servs.*, 233 F. Supp. 2d 615 (S.D.N.Y. 2002)…………10

*Dais v. Lane Bryant, Inc.*, 2000 U.S. Dist. LEXIS 1228 (S.D.N.Y. Feb. 8, 2000)…………….7

*Dilworth v. Goldberg*, 914 F. Supp. 2d 433 (S.D.N.Y. 2012)…………………………………...6

*Gen. Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862 (1979)……………………………………13

*GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92 (2d Cir. 2019)………………………8

*Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000)………………………………………………..6

*Graham Hanson Design LLC v. 511 9th Ave. LLC*,
    2011 U.S. Dist. LEXIS 18623 (S.D.N.Y. Feb. 24, 2011)………………………………11

*Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17 (S.D.N.Y. 2015)……………..2

*Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229 (2d Cir. 2007)………………………..6

*Landesbank Baden-Wurttemberg v. Goldman Sachs & Co.*, 821 F.2d 616 (S.D.N.Y. 2011)…..8

*Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082 (2d Cir. 1986)………………….13

*New York v. Amro Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991)………………………....5

*Ohio & Miss. Ry. Co. v. McCarthy*, 96 U.S. 258 (1877)…………………………………………….12

*Olaf Sööt Design, LLC v. Daktronics, Inc.*, 406 F. Supp. 3d 328 (S.D.N.Y. 2019)…………….2

*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999)…………………………………………..11

*Penn Mut. Life Ins. Co. v. Remling*, 268 A.D.2d 572 (2d Dept. 2000)…………………………..8

*Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866 (2d Cir. 1985)……………………………9

*Sasson v. Mann*, 2019 U.S. Dist. LEXIS 129464 (S.D.N.Y. Aug. 2, 2019)…………………......2

*Temple Beth Sholom, Inc. v. Commerce Indus. Ins. Co.*,
  173 A.D.3d 637 (N.Y. App. Div. 1st Dept. 2019)…………………………………………13

*The Youngbloods" v. BMG MUSIC*,
  2011 U.S. Dist. LEXIS 1585 (S.D.N.Y. Jan. 6, 2011)…………………………………………..7

*U.S. Underwriters Ins. Co. v. Ziering*,
  2010 U.S. Dist. LEXIS 88883 (E.D.N.Y. Aug. 27, 2010)……………………………………….7

*Western World Ins. Co. v. Stack Oil Inc.*, 922 F.2d 118 (2d Cir. 1990)…………………………2

**STATUTES AND RULES**

F.R.C.P. 15……………………………………………………………………………………………7

F.R.C.P. 16……………………………………………………………………………………………6

N.Y. Ins. Law § 3105(b)(1)…………………………………………………………………………...8

**Introduction**

Defendant seeks to amend its answer to reassert defenses for material misrepresentation and failure to mitigate damages. However, there are numerous arguments that, taken together, warrant the denial of the motion. They include that (a) defendant has made numerous judicial admissions over the course of the litigation that it was not pursuing a material misrepresentation defense and so have waived the right to pursue the defense, (b) there has been extraordinary delay which will prejudice the plaintiffs with the result that they will have to engage in a new discovery periods concerning the underwriting of the policy, (c) the amendment is sought in bad faith, (d) the defenses remain inadequately pled under *Twombly*, (e) the defendant waived any reliance on the purchase price when it withdrew its request for purchase documentation and instead requested a marine survey, (f) no misrepresentation was made about the purchase price, and (g) an insurance company may not decide to pay a claim and then reverse that decision during litigation.

Lastly, the mitigation defense is based on speculation, contradicted by defendant's experts, and is insufficiently pled.

While each of these grounds standing alone is sufficient to deny the instant motion, taken together they inexorably lead to this result.

**Judicial admission and Waiver**

Defendant seeks to void the insurance policy, and thus avoid paying the insurance claim, on the basis that plaintiffs made a material misrepresentation about the purchase price of the vessel in the insurance application. Defendant should not be permitted to pursue this defense based on principles of judicial admission and waiver.

Defendant's attorney has consistently and repeatedly represented to the Court that the sole issue in this case was the monetary amount required to make appropriate repairs to the *Gudelia* and never raised the issue of a material misrepresentation to this Court until the parties submitted their proposed jury instructions.  This lawsuit, until recently, has entirely focused on the amount of damages that defendant should pay and there was never a question as to whether the policy should be rescinded due to a material misrepresentation.

"Judicial admissions obviate the need for debate, discussion or discovery regarding particular factual issues because the parties make concessions or stipulations regarding those issues that remove them from dispute." *Banks v. Yokemick*, 214 F. Supp. 2d 401, 405 (S.D.N.Y. 2002) (citation omitted); *see Western World Ins. Co. v. Stack Oil Inc.*, 922 F.2d 118, 122 (2d Cir. 1990) ("[A] formal judicial admission is conclusive against [party throughout an] action.").  "Statements other than pleadings, including those in briefs or formal remarks by counsel, also bind the client as judicial admissions." *Sasson v. Mann*, 2019 U.S. Dist. LEXIS 129464, *33 (S.D.N.Y. Aug. 2, 2019) (citations omitted).  Judicial admissions may be made in letters to the court.  *See Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 39 (S.D.N.Y. 2015). Judicial admission can encompass an attorney's statement of his client's position.  *Olaf Sööt Design, LLC v. Daktronics, Inc.*, 406 F. Supp. 3d 328, 350 (S.D.N.Y. 2019) *aff'd and rev'd on other grounds*, 2021 U.S. App. LEXIS 416 (Fed. Cir. Jan. 7, 2021).

Defendant has represented to the Court on a repeated basis that it is willing to pay the insurance claim so that it has almost become like a mantra.  In a January 10, 2020 letter, defendant stated, "As Your Honor may recall, this action involves nothing more than an insured's dissatisfaction with his insurer's adjustment of a first party property claim."  (Ex. A). The letter further states, "The only issue in dispute is what the costs of repair to plaintiff's boat

are ….." In a July 22, 2020 letter to the Court, defendant states, "The sole issues in this litigation are simply the extent of damage and, scope and cost of repairs." (Ex. A). In an October 8, 2020 "Memorandum of Law In Support of Defendant's Motion to Strike the Expert Reports of Edward Glaser and Jesse Lowell," defendant states, "This is a simple insurance dispute where the sole issue before the Court is the extent of damage to and scope of repair of plaintiff Joseph Spadafora's boat, which suffered minor keel damage." (Ex. A). In an October 16, 2020 "Defendant's Response in Opposition to Plaintiff's Daubert Motion," defendant states in the first sentence: "The sole factual issue for determination in this action is the 'reasonable costs of repair' in accordance with 'the manufacturer's specifications' or 'generally accepted repair practices.'" (Ex. A). After defendant changed its tack in this case to assert a material misrepresentation defense, its counsel even acknowledged during a telephone conference with the Court that he has consistently represented that defendant had agreed to pay the insurance claim: "Now, counsel is correct, I did state before your Honor and I said it many times that the only issue at that point in time was how much." (Ex. A).

It is suggested that defendant's remarks during this litigation have been aimed to make it seem eminently reasonable and that plaintiffs were aggressively and unnecessarily pushing ahead with litigation. Not only has defendant now reversed its position about whether the claim should be paid, it has also along the way created a misleading impression that it was open to settling this case. In the January 10, 2020 letter to the Court (Ex. A), defendant stated it:

> [I]nvoked the insurance contract appraisal process to resolve the valuation dispute, but plaintiff refused to comply but instead filed this lawsuit. At the preliminary conference, we suggested that instead of spending money on discovery and depositions, the parties should appoint an independent expert with specific knowledge of how wooden boats like plaintiff's are built and repaired. Plaintiff's counsel agreed that this would make sense. We suggested several qualified builders for plaintiff to agree to (none of whom we contacted in advance to discuss the facts). In fact, one of the yards is the yard who

3

founder long ago first designed and built wooden lobster boats like plaintiff's. Plaintiff categorically rejected all these yards and refused to suggest another.[1]

This statement made by defense counsel is arguably improper under F.R.E. 408 as a settlement discussion. It is also another attempt for defendant to make itself look eminently reasonable. Defendant has opened the door to plaintiffs providing the full context to the Court. There was an unsuccessful settlement conference on September 22, 2020 before Magistrate Judge Lehrburger. Subsequently, Plaintiffs did agree to a binding appraisal as is reflected in a January 19, 2021 letter in which they proposed that defendant provide its top settlement number, and if rejected, the matter would be submitted to a "binding appraisal" before one of two individuals *identified by defendant's own expert, Cym Hughes*, as a qualified boat builder. (Ex. B). Defendant rejected this proposal and instead filed the instant motion. (Ex. B, Feb. 1, 2021 letter from Eric Dinnocenzo).

The overall point plaintiffs are making is that defendant has consistently made judicial admissions that seek to put it in a good light—that it has always been willing to pay the claim and seeks a reasonable settlement—but its actions are to the contrary and have been in bad faith as it has drawn out this litigation and interposed inconsistent positions when suitable. Defendant should be held to its judicial admissions. If it is not, it will have the effect of undermining these proceedings because defendant will have been enabled to make false representations to advance its case. It is of benefit for defendant to get plaintiffs to undergo a second discovery period about insurance underwriting, because defendant has virtually unlimited financial resources and plaintiffs are retired and over age 70 and do not.

---

[1] When defendant refers to a boat yard whose founder "first designed and built wooden lobster boats," he is referring to the Lowell family, of which plaintiffs' expert Jesse Lowell is a member. Quite ironically, defendant then sought to exclude Jesse Lowell as an expert witness.

As the Court is aware, Defendant had included a boilerplate material misrepresentation defense in its Answer that was dismissed by this Court due to it being insufficiently pled. Defendant asserts that Mr. Spadafora's deposition made it aware for the first time that there was a misreprensetation in the application about the purchase price, and it was only afterwards that it could pursue that defense. Of note, that deposition occurred on June 11, 2020. (Ex. C). Yet still, for the next four months, defendant, even though armed with this purported new discovery of a misrepresentation, continued to represent to the Court that it would pay the claim and it did not seek to assert or beef up its material misrepresentation defense.

In addition, the material misrepresentation defense has been *waived* by virtue of defendant's judicial admissions after the Spadafora deposition. The Second Circuit, in *New York v. Amro Realty Corp.*, 936 F.2d 1420, 1431 (2d Cir. 1991) (citations and quotations omitted) defined waiver in the insurance context:

> In the insurance context, New York law defines waiver as a voluntary and intentional relinquishment of a known right. Waiver may be found where there is direct or circumstantial proof that the insurer intended to abandon the defense. An implied waiver exists when there is an intention to waive unexpressed, but clearly to be inferred from circumstances. An irrevocable waiver may be found where the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to abandon or not to insist upon the particular defense afterward relied upon.

*See also AIG Eur. S.A. v. Franco Vago Int'l, Inc.*, 756 F. Supp. 2d 369, 380 (S.D.N.Y. 2010) ("Franco Vago's failure to assert the forum selection clause during the first eleven months of the pending litigation goes far beyond 'mere silence, oversight or thoughtlessness in failing to object.'").

Although defendant asserted a boilerplate material misrepresentation defense in its Answer, it chose to, through its actions and representations, continuously waive this defense over a period of months *both before and after the Spadafora deposition*. To be clear, even after it had

5

knowledge of purported material misrepresentations about the purchase price, it impliedly waived them by declaring on multiple occasions over the next four months that it would pay the claim. It had no obligation to do this, but rather it was a free and voluntary choice, most likely done in order to appear to be very reasonable in front of this Court. Accordingly, defendant has waived the material misrepresentation defense.

### Undue delay, bad faith and prejudice

Leave to amend may be denied where there is "undue delay, bad faith, undue prejudice to the opposing party, or futility of amendment." *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 450 (S.D.N.Y. 2012) (quotations omitted). "The court has discretion to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties." *Grace v. Rosenstock*, 228 F.3d 40, 53-54 (2d Cir. 2000) (citation and quotation omitted). "Where a significant period of time has passed prior to filing a motion to amend . . . the moving party must provide an explanation for the delay." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 2016 U.S. Dist. LEXIS 1792, 2016 WL 93865, at *2 (S.D.N.Y. Jan. 7, 2016); *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.").

Pursuant to F.R.C.P. 16 a separate "good cause" standard applies for modifications to a scheduling order that set an already-expired deadline for amendments to the pleadings. The Second Circuit has emphasized that "the primary consideration" in determining whether good cause has been shown "is whether the moving party can demonstrate diligence." *Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007). Even if the Court finds that the Rule 16(b) "good cause" standard has been satisfied, it must then proceed to consider

6

whether the new claim survives scrutiny under Rule 15. *U.S. Underwriters Ins. Co. v. Ziering*, 2010 U.S. Dist. LEXIS 88883 at *10-11 (E.D.N.Y. Aug. 27, 2010).

The defendant has sought to amend its answer after an extremely long delay. The action was filed on July 16, 2019, the original deadline to amend the pleadings was November 22, 2019, and the discovery deadline was February 18, 2020. (Docket Entry No. 13). The motion to amend was filed on February 19, 2021. Defendant offers no "good cause" explanation for its extraordinary delay to seek to amend the answer. *See Dais v. Lane Bryant, Inc.*, 2000 U.S. Dist. LEXIS 1228, *2 (S.D.N.Y. Feb. 8, 2000) (motion to amend denied where sought one year after complaint was filed and one month after close of discovery).

Plaintiffs will suffer prejudice because they will have to undertake discovery relating to defendant's underwriting practices. Instead of having one discovery period, they will basically have to endure two discovery periods occurring one after the other. This will entail document production with perhaps motions to compel, depositions, a possible summary judgment motion, and once again undergo the pre-trial process with new information. Plaintiffs, who are retired individuals, will incur additional legal expense in the context of litigating against an insurance company with unlimited resources. Even though the trial is not set to occur for several months, here is also the possibility of this action being further delayed, such as if there is a discovery dispute about defendant's underwriting practices or if a summary judgment motion is filed.

For reasons stated in the preceding section, plaintiffs also submit that the motion to amend should be denied because it is made in bad faith. *See "The Youngbloods" v. BMG MUSIC*, 2011 U.S. Dist. LEXIS 1585, *27-28 (S.D.N.Y. Jan. 6, 2011) (citation omitted) ("'[a] finding that a party is seeking leave to amend solely to gain a tactical advantage . . . supports a finding that such an amendment is made in bad faith.'"). Plaintiffs contend that defendant has

manipulated the litigation to suit its purposes, seeking to add shine to its appearance when it suited it, while later injecting the material misrepresentation defense into the litigation during pre-trial proceedings in order to assert every defense available and knowing it would result in plaintiffs objecting and the delay of these proceedings.

### The Amended Answer is still insufficiently pled

"The plausibility standard of *Twombly* applies to determining the sufficiency of all pleadings, including the pleading of an affirmative defense, …" *See GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 98 (2d Cir. 2019). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not adequate to support a claim or defense. *Landesbank Baden-Wurttemberg v. Goldman Sachs & Co.*, 821 F.2d 616, 621 (S.D.N.Y. 2011). The material misrepresentation defense set forth in the fourth, eighth, tenth, and eleventh affirmative defenses is still not adequately pled.

An insurer may "avoid any contract of insurance or defeat recovery thereunder" only if a misrepresentation is "material." N.Y. Ins. Law § 3105(b)(1). "[F]or a misrepresentation to warrant the voiding of an insurance policy, the misrepresentation must be material, meaning that had the insurer known the truth, it would not have issued the policy." *Penn Mut. Life Ins. Co. v. Remling*, 268 A.D.2d 572, 573, 702 N.Y.S.2d 375 (2d Dept. 2000) (citation omitted); *see* N.Y. Ins. Law § 3105(b)(1). "To establish materiality as a matter of law, the insurer must present documentation concerning its underwriting practices, such as underwriting manuals, bulletins, or rules pertaining to similar risks, that show that it would not have issued the same policy if the correct information had been disclosed in the application." *Caldera v. Utica Mut. Ins. Co.*, 130 A.D.3d 665 (2d Dept. 2015).

Under the doctrine of *uberrimae fidei* which applies to marine insurance contracts, the Second Circuit has observed in *Puritan Ins. Co. v. Eagle S.S. Co. S.A.*, 779 F.2d 866, 871 (2d Cir. 1985) (citations and quotations omitted) that the misrepresented information must actually have been relied upon by the insurance company and impact its underwriting decision:

> The principle of *uberrimae fidei* does not require the voiding of the contract unless the undisclosed facts were material and relied upon. A fact is not material unless it is something which would have controlled the underwriter's decision, and a marine insurance policy cannot be voided for misrepresentation where the alleged misrepresentation was not relied upon and did not in any way mislead the insurer.

To begin, there is no recital of any pertinent facts before the fourth and eighth affirmative defenses and they should be stricken due to insufficiency. The only factual assertions relating to misrepresentation are included in the tenth and eleventh affirmative defenses and they state, in pertinent part:

> Plaintiffs represented on the insurance application that the purchase price of the vessel was $450,000. Plaintiff testified at deposition under oath that he paid only about $260,000 to purchase the vessel. Plaintiff also testified that a third party not for profit entity paid amounts to complete the vessel in exchange for a desired ownership interest in the vessel. Plaintiff misrepresented material facts in connection with the insurance application and the occurrence.

These two defenses are insufficiently pled. The affirmative defenses do not state that the policy would not have been issued had the true facts been disclosed or that the purchase price was "relied upon" or misled the defendant. In support of the motion, defendant does not offer any evidence that the purchase price influenced the underwriter's actions when the policy was issued. The affirmative defenses also are entirely conclusory without stating how and why an inaccurate purchase price would be material.

The defendant's amended answer does not even identify the monetary amount of the alleged misrepresentation. It states that plaintiffs paid $260,000 out of their own pocket for the vessel and that a third party "paid amounts to complete the vessel …". This does not plausibly

9

state that the $450,000 purchase price is incorrect. Defendant omits what amount was paid by the third-party. *See Certain Underwriters at Lloyd's London v. Bioenergy Dev. Group, LLC*, 2020 N.Y. App. Div. LEXIS 7869 (1st Dept. Dec. 17, 2020) (in the context of a summary judgment motion in state court, stating that "affidavits asserting that if defendants had not undervalued the insured property in their insurance application plaintiffs 'would not have issued the same policy subject to the same terms and conditions' are conclusory.").

Further, the fact that a third party may contribute to the purchase of a vessel does not impact the insurance coverage. Yet defendant implies, without any support, that only the amount actually paid by the insured out of his or her own pocket is what matters for purposes of insurability. Yet this is an untenable position. For example, if I pay $10,000 towards the purchase of a car and my parents pay an additional $10,000, that does not mean I can only insure the vehicle for $10,000. If that was the case, most residential homes would be inadequately insured because it was not the homeowner, but a mortgage company, that paid most of the purchase price. Defendant does not articulate any underwriting standards or procedures used in this case, or even whether a vessel's purchase price plays a role in underwriting, especially where, as here, the insurer withdraws its request for purchase documents and instead asks for a marine survey.

### **Lack of Merit and Futility**

The affirmative defenses for material misrepresentation are also futile and lack merit. "When there is no merit in proposed amendments, leave to amend should be denied." *See Chimarev v. TD Waterhouse Investor Servs.*, 233 F. Supp. 2d 615, 617 (S.D.N.Y. 2002). The Second Circuit has held that leave to amend may be denied based on futility when it is "beyond

10

doubt that the plaintiff can prove no set of facts in support of [its] amended claims." *Pangburn v. Culbertson*, 200 F.3d 65, 71 (2d Cir. 1999) (quotation omitted).

Plaintiffs refer to the legal standard cited above for proving material misrepresentations. This standard requires the assertion of specific facts. The Court already granted plaintiffs' motion *in limine* concerning the material misrepresentation defense and then gave the defendant an opportunity to file a motion to amend. Defendant has had a second bite at the apple and has failed in that regard because the affirmative defenses do not connect the dots to equate to a material misrepresentation; they do not show there was an actual misrepresentation that was relied upon by the underwriter, and that if the true facts had been known, the policy would not have been issued. Nor can defendant submit another proposed amended answer in a reply. *See Graham Hanson Design LLC v. 511 9th Ave. LLC*, 2011 U.S. Dist. LEXIS 18623, *12, n.3 (S.D.N.Y. Feb. 24, 2011).

The amended answer is also defective because its allegations are simply not true. Defendant states, "During plaintiff's deposition in this action, Standard Fire for the first time learned that the purchase price of the vessel was not $450,000, but closer to $260,000. Spadafora does not contest these facts." Actually, he does contest these facts. Defendant further states: "Specifically, Spadafora declared under penalty of perjury that he "received" two invoices in September 2016 (four months after the policy incepted) from Wooden Boatworks in the total amount of about $135,000. Plaintiff Spadafora concedes though that he did not pay these invoices because they were "paid by a foundation." As such, it cannot be disputed that the "purchase price" of the vessel was only about $250,000 and not $450,000 as represented by plaintiffs on the application of insurance."

11

This is false.  Plaintiff did not state that he "received" the invoices in September 2016. Rather, Mr. Spadafora previously submitted a Declaration to this Court (Ex. D) which specifically states that in a prior lawsuit filed in the Southern District (15-cv-4840) he alleged he paid a total amount to the boatbuilder of $354,000 and that he received two other invoices prior to completing the insurance application, one being invoice #1379 dated February 3, 2016 in the amount of $44,127.38 and the other was invoice #1382 dated March 25, 2016 in the amount of $89,787.03.  (Ex. D).  This brings the total amount paid to $487,914.41.  Defendant misreads these invoices as being made in September 2016 when that is simply not the case.  (Ex. D). Thus, a $450,000 purchase price listed in the application cannot be a material misrepresentation. This is proven by the fact that defendant claims there was a material misrepresentation because plaintiffs overstated the purchase price.  If anything, under the set of facts from plaintiffs, the purchase price was actually understated.

Defendant also narrowly construes the purchase price as what is paid out of pocket by the policyholder.  Again, there is no support for this overly narrow interpretation.  Not to belabor the point, but defendant's position would mean that if someone took out a boat loan for $80,000 to purchase a $100,000 boat, paying the difference in cash, the boat would only be insurable for $20,000.  Presumably, then, if the boat was destroyed, the insured would be liable to the bank to repay the $80,000.  Such an arrangement would totally defeat the purpose of insurance.

**Defendant cannot change its position in litigation to deny the claim**

The phrase "mend the hold" originated from an 1877 Supreme Court case which stated:

> Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold.  He is estopped from doing it by a settled principle of law.

*Ohio & Miss. Ry. Co. v. McCarthy*, 96 U.S. 258, 267-68 (1877).

Although it was in the context of liability insurance, the New York State Court of Appeals has held that an insurer may not change its position regarding disclaimer of coverage in the middle of litigation and assert new grounds. *Gen. Accident Ins. Group v. Cirucci*, 46 N.Y.2d 862 (1979). In a life insurance dispute, the New York State Appellate Division held that defenses not asserted in an initial disclaimer letter were later waived. *Agrawal v. Metro. Life Ins. Co.*, 89 A.D.3d 503 (N.Y. App. Div. 1st Dept. 2011); *see also Luria Bros. & Co. v. Alliance Assurance Co.*, 780 F.2d 1082, 1090 (2d Cir. 1986) (citations and quotations omitted) ("It is settled that when one specific ground of forfeiture is urged against the claim, and a refusal to pay is based upon a specific ground, all other grounds are waived."). In *Cedar & Wash. Assocs., LLC v. United States Fire Ins. Co.*, 2006 U.S. Dist. LEXIS 113589, *11-12 (S.D.N.Y. Sept. 26, 2006), the Southern District observed that the waiver rule encompasses first-party property damage insurance disputes. Most recently, in 2019, the New York Appellate Division held that an insurer which accepts and processes a claim is estopped from subsequently changing its position and denying the claim. *See Temple Beth Sholom, Inc. v. Commerce Indus. Ins. Co.*, 173 A.D.3d 637 (N.Y. App. Div. 1st Dept. 2019). In that case, the Court observed that, "[S]ince Commerce accepted coverage, without reservation, and without having investigated the tender or having failed to uncover facts that were readily available through a review of the contracts and an interview of its insured, through no fault of Temple, Commerce is estopped from denying or disclaiming coverage." *Id.*

These cases lead to the conclusion that the material misrepresentation defense cannot be pursued here under equitable principles. Defendant had every opportunity, before the claim was adjusted and this action was filed, to investigate the material misrepresentation issue yet it chose not to and instead decided to pay the claim. *It never issued a reservation of rights that it may*

*assert defenses to coverage in the future.*  Once defendant decided to pay the claim, it cannot use the litigation process to create defenses to coverage.  The net effect of this strategy is that defendant is essentially saying, take our lowball offer during the claim process or otherwise we will make you sue us and then later find a way to disclaim coverage—getting something from us now is better than getting nothing later on.  This is bad faith conduct.

The case law is clear that an insurance company, when it has already decided to disclaim coverage for a specified reason, cannot later supplement that disclaimer with additional grounds.  It therefore stands to reason that an insurance company cannot decide to pay a claim and then reverse course well after a lawsuit is filed and to contest payment of the claim.  If this Court adopted such a holding, it would represent a major pullback from the line of decisions set forth above.  Moreover, in this instance, defendant has sought to reverse course well after the close of discovery, and when its attorney has repeatedly made judicial admissions that the only issue was how much defendant had to pay for the damage.

Another reason there is no material misrepresentation defense is because, prior to issuing the policy, defendant received a April 29, 2016 Marine Survey that showed a market value of $450,000 and a replacement value of $900,000.  (Ex. E).[2]  In return for the survey, defendant specifically withdrew its earlier request for a copy of the purchase agreement.  An underwriting document entitled "Yacht Referral Worksheet" states, "… waived purchase agreement in lieu of survey."  (Ex. E).  This shows that the purchase price was immaterial to its underwriting.  Defendant was essentially saying it did not need that information because it was unimportant.  Insurance companies only place insurance coverage based on market value or replacement value,

---

[2] Plaintiffs only annex the relevant portion of the survey that shows these values.

14

and do not take purchase price into account.³  As a matter of law, there can be no argument that defendant relied upon the listed purchase price of $450,000 and then issued a policy based on it, when it specifically withdrew its request for the purchase agreement in lieu of the survey.  This constitutes a waiver of the right to assert a material misrepresentation based on purchase price.

**Mitigation**

Defendant makes an unclear argument that seems to indicate that, in discovery, plaintiffs did not produce photographs of the vessel before it was loaded on a freighter, and the photos "could demonstrate that the condition of the vessel before loading was not as serious as after loading" when it was inspected by a marine surveyor hired by defendant.  This argument appears to relate to its Seventh and Eleventh Affirmative Defenses.

There are numerous problems with this assertion.  To begin, defendant has possession of these photographs, and if defendant alleges there were improprieties in discovery, it never filed a related motion.  Defendant also did not annex these photos to its moving papers.  Its argument that the photos "could demonstrate" damage from the loading process onto the freighter is speculation.  The argument is also improperly made in a memorandum of law.  Defendant would need to make this argument through Declarations of its expert witnesses or other persons with knowledge, which it has not done.

The freighter personnel are trained in transporting vessels and it is false to claim they damaged the vessel.  In fact, if there was a reason to believe they did, defendant would pursue them for subrogration which it has not done.

In any case, the existence of these photos do not support a mitigation defense.  Evidence of this comes from defendant's own experts.  The marine surveyor, Robert Stefanowicz, testifies

---

³ https://www.statefarm.com/simple-insights/residence/replacement-cost-vs-market-value
https://www.travelers.com/resources/home/insuring/is-your-home-insured-to-its-replacement-value

that the damage came from the accident. (Ex. F). Cym Hughes testified that he could not identify any damage caused from operating the boat post-accident. (Ex. G). Defendant cannot amend its answer based on speculation about the cause of damage that differs from its own experts' testimony. The mitigation defense was already dismissed by this Court. The proposed amendment does not revive it. The proposed amendment only shows that defendant is engaging in bad faith to try and deny the claim on any basis it can find when earlier it had agreed to pay the claim.

*Moreover, the mitigation defense is insufficiently pled under* Twombly.

Defendant also argues that the photographs support a defense of "misrepresentation during the claim process." This is not true. There is no evidence that, during the claim process and before this lawsuit was filed, defendant requested that plaintiffs provide it with photographs and they failed to comply.

**Conclusion**

Plaintiffs respectfully request an Order denying Defendant's motion in its entirety, and for all other relief that is just and proper.

Dated: New York, New York
March 4, 2021

          LAW OFFICES OF
          ERIC DINNOCENZO

    By:    *s/Eric Dinnocenzo*
          Eric Dinnocenzo (ED 3430)
          Attorney for Plaintiff
          469 Seventh Avenue, Suite 1215
          New York, NY 10018
          (212) 933-1675
          eric@dinnocenzolaw.com